ARIEL E. STERN
Nevada Bar No. 8276
AKERMAN SENTERFITT LLP
Email: ariel.stern@akerman.com
400 South Fourth Street, Suite 450
Las Vegas, Nevada 89101
Telephone: (702) 634-5000

*Attorneys for Defendants Bank of America, N.A.,*
*and Federal Home Loan Mortgage Corp.*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JON J. SIMON, an individual, | Case No.: 2:10-cv-00300-RCJ-LRL |
| Plaintiff, | **DEFENDANTS' MOTION TO DISMISS THE COMPLAINT** |
| v. | |
| BANK OF AMERICA, N.A., FEDERAL HOME LOAN MORTGAGE CORP.; MERSCORP, INC., a Virginia Corporation, MORTGAGE ELECTRONIC SYSTEMS, INC, a subsidiary of MERSCORP, Inc., a Delaware corporation; AND DOES I individuals 1 to 100, Inclusive; and ROES Corporations 1 to 30, Inclusive,; and all other persons and entities unknown claiming any right, title, estate, lien or interest in the real property described in the Complaint adverse to Plaintiff's ownership, or any cloud upon Plaintiff's title thereto, | |
| Defendants. | |

Defendants Bank of America, N.A. (Bank of America) and the Federal Home Loan Mortgage Corporation (Freddie Mac) (collectively, Defendants) move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss plaintiff Jon J. Simon's Complaint for failure to state a claim for which relief can be granted.

This Motion is based on the pleadings and papers on file herein, along with the following Memorandum of Points and Authorities.

/ / /

/ / /

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiff Jon J. Simon brings this action against Bank of America, Freddie Mac and Mortgage Electronic Registration Systems, Inc. (MERS).  Most of his ire is directed at MERS, a corporation that serves a registry that facilitates secondary mortgage market transactions.  His claims in this Complaint are so vague against Bank of America and Freddie Mac that they fail to state any claim for relief.  The Complaint does not even make the basic allegation of how exactly MERS and Freddie Mac were involved in his loan.  Plaintiff's efforts to impose liability on Bank of America and Freddie Mac for their involvement with MERS is contrary to Nevada law, under which MERS' participation in mortgages and deed of trust is allowable.  The entire Complaint should be dismissed with prejudice.

## II.    FACTS OF THE COMPLAINT

Mr. Simon claims to own the real property at 2490 Begonia Valley in Henderson, Nevada. (Complaint dated January 29, 2010, ¶ 10.[1])  Mr. Simon took out a loan on or about June 23, 2005 for the purpose of purchasing the Begonia Valley property.  (Compl., ¶ 2.)  In connection with the loan, he executed a promissory note and a deed of trust that made the property security for repayment of the loan.  (Compl., ¶ 2.)  MERS was designated the beneficiary of the deed of trust.  (*See* Compl. ¶ 11.) Plaintiff alleges that Bank of America and Freddie Mac were part of a conspiracy to commit fraud related to the MERS system.  (Compl., ¶ 14.)

Plaintiff alleges he was in negotiations for a loan modification program under the Home Affordable Modification Program (HAMP) when "predatory foreclosure proceedings were initiated by the defendant parties."  (Compl., ¶ 16.)  Plaintiff's Complaint does not indicate what stage the foreclosure proceedings have reached.  (*See*, Compl., ¶ 94 (pleading in the alternative that Defendants have begun or have completed the foreclosure process).)

On January 29, 2010, Mr. Simon commenced this action by filing a Complaint in the District Court of Clark County, Nevada.  Defendants Bank of America, Freddie Mac and MERS removed the

/ / /

---

[1] There are two paragraphs numbered "1" through "18."  This refers to the paragraph 10 on page 3 of the Complaint.  All subsequent paragraph references refer to the numbered paragraph sequence that begins on page 4 under the "General Allegations" heading.

1    case to this United States District Court on March 4, 2010.  Bank of America and Freddie Mac now

2    move to dismiss for the complaint's failure to state a claim for relief against either of them.

3                                       **III.    LEGAL STANDARD**

4          "A plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than

5    labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell*

6    *Atlantic v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007).  "[F]actual allegations must be

7    enough to raise a right to relief above the speculative level." *Id.* at 1965.  In considering a Rule 12(b)(6)

8    motion, a court need not accept as true unreasonable inferences or conclusory legal allegations cast in

9    the form of factual allegations.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001);

10    *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  In a recent decision, the Supreme

11    Court reviewed the standard for a pre-answer motion to dismiss.  *Ashcroft v. Iqbal*, __U.S. __, 129

12    S.Ct. 1937 (2009).  It explained that a complaint must offer more than an "unadorned, the-defendant-

13    unlawfully-harmed-me accusation."  *Id*. at 1949.  This means that "naked assertions devoid of further

14    factual enhancement" no longer suffice to state a claim.  *Id*. at 1949 (internal quotation omitted).  The

15    facts actually pled must give rise to a plausible claim for relief.  *Id*. at 1949.  A formulaic recitation of

16    the elements, because of its conclusory nature, is disentitled to a presumption of truth.  *Id*. at 1951.

17          Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public

18    record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Dismissal with prejudice is

19    proper if "it is clear that the complaint could not be saved by any amendment." *Livid Holdings, Ltd. v.*

20    *Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

21                                        **IV.    ARGUMENT**

22    **A.    The Complaint Improperly "Lumps" the Defendants**

23          Almost all of the claims in the Complaint are alleged against all of the captioned Defendants.

24    The allegations within these causes of action rarely distinguish among the Defendants.  This improper

25    lumping is grounds enough to dismiss the claims.  *Gen-Probe, Inc. v. Amoco Corp*., 926 F.Supp. 948,

26    960 (S.D. Cal. 1996); *Gauvin v. Trombatore*, 682 F.Supp. 1067, 1071 (N.D. Cal. 1988) (lumping all

27    defendants together fails to satisfy Rule 8 notice provision).

28    / / /

1    **B.    Preemption for BoA**

2        Bank of America is a national bank, as indicated in publicly available information on the

3    website of the Office of the Comptroller of the Currency (OCC).[2]   As a national bank, its mortgage

4    lending activities are subject to a comprehensive scheme of federal regulation that preempts state laws.

5        The doctrine of preemption derives from the U.S. Constitution's Supremacy Clause, U.S.

6    Const. Art. VI, cl. 2, which states that laws of the United States "shall be the supreme law of the

7    Land."   Preemption may take three forms:  (1) "express" preemption occurs when Congress states its

8    intent to preempt, (2) "field" preemption occurs when preemption is implied by the nature of the

9    regulatory scheme, and (3) "conflict" preemption occurs when state regulation makes compliance with

10   federal law impossible.  *See, e.g., Williamson v. Gen. Dynamics Corp*., 208 F.3d 1144, 149 (9th Cir.

11   2000).  Absent explicit preemptive language, Congress's intent to supersede state law altogether may

12   be inferred because "[t]he scheme of federal regulation may be so pervasive as to make reasonable the

13   inference that Congress left no room for the States to supplement it" or because "the Act of Congress

14   may touch a field in which the federal interest is so dominant that the federal system will be assumed

15   to preclude enforcement of state laws on the same subject."  *Rice v. Santa Fe Elevator Corp.,* 331 U.S.

16   218, 230 (1947).

17       Federal regulations have no less pre-emptive effect than federal statutes." *Fidelity Federal Sav.*

18   *& Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982)). Further, "the usual presumption against

19   federal preemption of state law is inapplicable to federal banking regulation." *Rose v. Chase Bank USA,*

20   *N.A.*, 513 F.3d 1032, 1037 (9th Cir. 2008) *(quoting Wells Fargo Bank, N.A. v. Boutris*, 418 F.3d 949,

21   956 (9th Cir. 2005)).

22       The relevant regulations in this case were promulgated by the OCC in 2004 and are found at 12

23   C.F.R. § 34.4(a), and promulgated under authority of the National Bank Act, specify that national

24   banks like Bank of America may make real estate loans without regard to state law limitations, *inter*

25   *alia*, in the following areas:

26   _____

27   [2]  A list of national banks updated periodically is available for download or onscreen viewing at
     http://www.occ.treas.gov/foia/foia.htm.  Bank of America, N.A. appears on page 2 of the downloadable pdf
     document.  The Court may take judicial notice of information on a government website.  *Pioneer Military*

28   *Lending, Inc. v. DuFauchard*, No. Civ. S-06-1445 LKK/PAN, 2006 WL 2053486, at *13, n.24 (E.D.Cal. July 21,
     2006).

(4) The **terms of credit**, including schedule for repayment of principal and interest, amortization of loans, balance, payments due, minimum payments, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;

(9) **Disclosure** and advertising, **including laws requiring specific statements, information, or other content** to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents;

(10) **Processing, origination,** servicing, sale or purchase of, or investment or participation in, mortgages." [emphasis added]

When a state law intrudes on an area specified in 12 C.F.R. § 34.4(a)(1)-(14), it is in conflict with federal law and, therefore, preempted. The reach of the NBA preemption regime is bounded by 12 C.F.R. § 34.4(b), which explains that state law on certain subjects, including contracts and torts, are not preempted when "they are not inconsistent with the real estate lending powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' real estate lending powers." It makes no difference that the state law might be of general application, not specifically directed at the mortgage lending business. In *Fultz v. World Sav. & Loan Ass'n*, No. C08-0343 RSL, 2008 WL 4131512 (W.D.Wash. Aug. 18, 2008), the Court dismissed state law fraud claims based on a theory that the defendant national bank had failed to make required disclosures and had misstated the true cost of the loan. The court explained that the question, which it answered in the affirmative, was whether the laws were "being used by plaintiffs as a vehicle to impose limitations on the exercise of national banks' real estate lending power." *Id.* at *2.

In this case, several of the causes of action in the Complaint are preempted by federal regulation if they are understood to be alleged against Bank of America. Plaintiff's first cause of action alleges that "defendants" engaged in unfair lending practices. Mr. Simon alleges the loan was made without consideration of his ability to repay it, and claims it was only made on the basis of his credit score and the value of the property. (Compl., ¶¶ 29, 31.) These allegations squarely challenge the terms of credit offered, 12 C.F.R. § 34.4(a)(4), and the processing and origination of the loan. 12 C.F.R. § 34.4.(a)(10). In the second cause of action, plaintiff alleges that the notice of the right to transfer servicing of the loan was not made, in violation of state laws concerning deceptive practices. (Compl., ¶ 39.) If a cause of action lies for improper disclosures, it must be under federal law, the Real Estate

/ / /

1   Settlement Procedures Act, 12 U.S.C. § 2605, not under state law.  Because of the preemptive effect of

2   12 C.F.R. § 34.4(a)(10), that cause of action cannot proceed as currently pled.

3          Therefore, in addition to the specific deficiencies discussed below, the first two causes of action

4   are, at least in part, preempted by National Bank Act regulations against Bank of America.

5   **C.      No Unfair Lending Practices (First Cause of Action)**

6          The first claim for relief in the Complaint is that "defendants" violated Nev. Rev. Stat. § 598D.

7   Assuming that Plaintiff means to allege the first cause of action against Bank of America or Freddie

8   Mac, the claim fails in the first instance because he never alleges that either of those entities actually

9   originated his loan.

10          Even if one of the defendants originated the loan, the first cause of action is still insufficient

11   because this loan was simply not covered by the law at the time it was made.  In 2005, the definition of

12   home loan in Nev. Rev. Stat. § 598D.040 was as follows:

13          "a consumer credit transaction that is secured by a mortgage loan which involves real
            property located within this State and constitutes a mortgage under § 152 of the Home
14          Ownership and Equity Protection Act of 1994, 15 U.S.C. § 1602(AA) {HOEPA}, and the
            regulations adopted by the Board of Governors of the Federal Reserve System {the
15          Federal Reserve} pursuant thereto, including, without limitation, 12 C.F.R § 226.32."

16          Section 1602(aa)(1) excludes "residential mortgage transactions" - like this one, based on a

17   purchase money loan - from the definition of residential mortgage transactions under the Truth-in-

18   Lending Act (TILA), of which HOEPA is a part.  *See, e.g.*, *Castro v. Executive Trustee Servs.*, LLC,

19   No. CV-08-2156-PHX-LOA, 2009 WL 438683, at *7 n.9 (D.Ariz. Feb. 23, 2009) ("'HOEPA does not

20   apply to, *inter alia*, 'residential mortgage transactions.'").  By incorporating the HOEPA definition of a

21   home loan into Nevada law, the Legislature therefore made the version of Nev. Rev. Stat. § 598D that

22   was in effect in 2005 inapplicable to purchase money loan transactions.  One of the few facts this

23   Complaint actually does set forth is that Plaintiff borrowed money in 2005 "for the purpose of

24   purchasing Plaintiff's residence[.]"  (Compl., ¶ 12.)

25          Plaintiff cannot state a claim for relief because his loan was not the subject of the statute in

26   2005.  Although the definition of "home loan" relevant to Nev. Rev. Stat. § 598D was amended in

27   2007, that change is not retroactive in effect.  *See United States v. Perry*, 431 F.2d 1020, 1023 (9th Cir.

28   1970) (statutes are presumed to operate only prospectively).  *Velasquez v. HSBC Mortgage Servs.*, No.

1   2:09-cv-784-KJD-LRL, 2009 WL 2338852 (D.Nev. July 24 2009) presented essentially the same

2   situation as that before the Court now. In *Velasquez*, the Court held that a case begun in 2009 based on

3   a 2005 loan was subject to the law as it was in 2005, not as amended in 2007. *Id*. at *3-4. It held that

4   the 2005 language applied, and it dismissed the claim because the loan was not within the statute when

5   originated. *Id*. at *4; *accord Aguilar v. WMC Mortgage Corp*., 2:09-cv-1416-ECR-PAL, 2010 WL

6   185951, at *5-6 (D.Nev. Jan. 15, 2010).

7           For these reasons, the first cause of action fails to state a claim for which relief can be granted.

8       **D.    No Deceptive Trade Practices (Second Cause of Action)**

9           Mr. Simon alleges that Defendants violated Nev. Rev. Stat. § 598.091 and Nev. Rev. Stat. §

10  598.0923 (Compl., ¶ 36.) Under the Nevada law, "[a]n action may be brought by any person who is a

11  victim of consumer fraud." Nev. Rev. Stat. § 41.600(1). Each of these statutes defines misconduct

12  actionable under the Nevada Deceptive Trade Practices Act (NDTPA). *See* Nev. Rev. Stat. §

13  41.600(2)(e). As with all of his claims, he does not specify which Defendants actually did the conduct

14  at issue. The claim can be dismissed for this lack of specificity alone.

15          The Nevada Supreme Court has not analyzed the elements of a private NDTPA claim. "Where

16  the state's highest court has not decided an issue, the task of the federal courts is to predict how the state

17  high court would resolve it." *Giles v. Gen. Motors Acceptance Corp*., 494 F.3d 865, 872 (9th Cir.

18  2007). After analyzing the statute, Judge Pro recently concluded that a victim of consumer fraud will

19  succeed on his claim if he proves (1) an act of consumer fraud by the defendant (2) causing him (3)

20  damage. *See Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651 (D. Nev. 2009).

21          Mr. Simon alleges that the deceptive practices were the failure to furnish him a correct "Notice

22  of Servicing" pursuant to 12 U.S.C. § 2605(a) and the supposed receipt of kickbacks or unearned fees.

23  (Compl., ¶¶ 39, 41.) In addition to being preempted, *see* section IV(B), *supra*, these allegations do not

24  set forth a viable claim for relief on their own terms. First, Plaintiff fails to explain how the acts

25  alleged – which are essentially a failure to disclose and the collecting of certain fees – are actionable

26  fraud. He neither sets forth any specific misrepresentations related to that conduct. Each of the

27  statutory subsections he references in paragraph 36 includes a number of definitions of potentially

28  / / /

1    actionable conduct, but it is a complete mystery into which category he alleges any Defendants' conduct

2    falls here.

3           The second problem with the second cause of action is the absence of plausible damages

4    flowing from the supposed failure to provide a notice of transfer of servicing rights.  Plaintiff does not

5    claim that he did not learn of any transfer of servicing rights, merely that the lender did not inform him

6    of that possibility pursuant to section 6 of RESPA at the time of origination in 2005.  (*See* Compl., ¶

7    39.)  It is hard to understand how he could have suffered damage by this omission, and the Complaint

8    makes no effort to explain.  Because damages are an essential element of an NDTPA claim, this

9    allegation cannot be the basis for a viable claim.

10          Third, the claim is untimely because the alleged violations took place at or about the time of

11   origination, June 2005.  The notice that servicing rights can be transferred is to be made "at the time of

12   the application for the loan[.]"  12 U.S.C. § 2605(a).  Plaintiff alleges that Defendants paid kickbacks or

13   collected improper fees at the time of the real estate settlement.  (Compl., ¶ 41.)  Under Nev. Rev. Stat.,

14   11.190(2)(d), a claim for a violation of Nev. Rev. Stat. § 598.091 and Nev. Rev. Stat. § 598.0923 must

15   be brought within four years.  Here, the Complaint was filed four and a half years after the loan

16   originated (and the offending conduct took place).  Therefore, the second cause of action was filed

17   outside the statute of limitations.

18          For these reasons, the second cause of action should be dismissed.

19   **E.   Defendants Are Not Liable for Wrongful Foreclosure (Third Cause of Action).**

20          Plaintiff next alleges a claim for wrongful foreclosure, but it is not clear that he has standing to

21   bring such a claim.  The Complaint appears to allege that a nonjudicial foreclosure has begun, but it

22   does not clearly assert that the foreclosure has resulted in a sale.  The Supreme Court of Nevada

23   explained that a wrongful foreclosure claim only lies when a trustor can establish no breach existed that

24   would have authorized the exercise of the power of sale under the deed of trust.  *Collins v. Union Fed.*

25   *Sav. & Loan Ass'n*, 99 Nev. 284, 303, 662 P.2d 610, 623 (1983).  As articulated by the Supreme Court,

26   it appears that a wrongful foreclosure action comes into existence when the power of sale is exercised,

27   *i.e.*, until the property is sold.  This is consistent with many other jurisdictions.  *See Hulse v. Ocwen*

28   *Federal Bank*, 195 F.Supp.2d 1188, 1204 (D.Ore. 2002); *Young v. 1st American Financial Servs.*, 992

{NY096071;1}                                              9

1    F.Supp. 440, 445 (D.D.C. 1998); *Reese v. First Missouri Bank and Trust Co.*, 736 S.W.2d 371, 372-373

2    (Mo. 1987).

3         The Supreme Court of Nevada has also explained that "the material issue in a wrongful

4    foreclosure claim is whether the trustor was in default when the power of sale was exercised." *Id.* at

5    303.  Here, the only reasonable inference from the boilerplate allegations of the Complaint is that

6    Plaintiff is in payment default of his loan.  For example, he avers that Defendants conspired to cause

7    him to enter into instruments that would result in the foreclosure of "her" [*sic*] home, (Compl., ¶ 8), that

8    he was attempting to modify his loan through the federal Home Affordable Modification Program,

9    (Compl., ¶ 44), which is designed to help defaulting borrowers retain their homes, and that Defendants

10   have commenced foreclosure.  (*See*, Compl., ¶ 45.)  By contrast, he never contends that he is current on

11   his loan payments.  Therefore, it is not plausible under the *Twombly/Iqbal* standard that Mr. Simon can

12   succeed on a wrongful foreclosure claim in light of his failure to make all payments required.

13        Nor does he have an actionable claim based on applying for a HAMP modification.  The HAMP

14   derives from the Emergency Economic Stabilization Act (EESA), 12 U.S.C. § 5201, *et seq.*  Even if

15   plaintiff means to allege he was entitled to a loan modification or forbearance under HAMP, such an

16   allegation fails to state a claim for relief.  There is no authority to suggest that the EESA creates a

17   private right of action for borrowers to demand relief on their mortgages.  *See Ramirez v. Litton Loan*

18   *Servicing LP*, No. CV-09-319, 2009 WL 1750617, at *1 (D.Ariz. June 22, 2009) (dismissing claim

19   seeking to force private businesses holding mortgages to modify loans under EESA); *Mangosing v.*

20   *Wells Fargo Bank, N.A.*, No. 09-CV-601, 2009 1456783, at *1 (D.Ariz. May 22, 2009); *see also*

21   *Williams v. Geithner*, No. 09-1959, 2009 WL 375738, at *6-7 (D.Minn. Nov. 9, 2009) (borrowers have

22   no property interest in loan modifications under HAMP).

23        The wrongful foreclosure claim includes a stray reference to 15 U.S.C. § 1681n(a)(2). (Compl.,

24   ¶ 47.)  That statutory section makes punitive damages available for violations of the Fair Credit

25   Reporting Act.  The Complaint contains no specific allegations of credit reporting violations, *i.e.*, no

26   allegations stating what Defendant reported incorrect information to whom, when or why the

27   information was wrong. This "allegation" has no apparent connection to "wrongful foreclosure."

28        For all of these reasons, the third cause of action should be dismissed.

{NY096071;1}                                    10

**F.     No Viable Conspiracy Claims (Fourth and Fifth Causes of Action)**

Plaintiff's fourth and fifth causes of action allege that Bank of America and Freddie Mac conspired with MERS in creating the MERS system.  To plead conspiracy, a plaintiff must allege the formation and operation of a conspiracy, wrongful acts in furtherance of the conspiracy, and damages to the plaintiff.  *Chase Bank USA, N.A. v. Dispute Resolution Arbitration Group*, No. 2:05-cv-1208-LRH, 2007 WL 1577583, at *2 (D.Nev. May 31, 2007) (*citing Collins*, 662 P.2d at 622).  These claims fail to state a claim for relief that can be granted because the use of MERS as beneficiary of a deed of trust, and the MERS system in general, are lawful.  In addition, Plaintiff's allegations relating to the formation and operation of the conspiracy are too conclusory to be credited.

**1)     Plaintiff Pleads No Facts Related to the Conspiracy**

Mr. Simon's Complaint simply assumes the existence of a conspiracy related to the use of MERS.  Under the pleading standard recently explained by the Supreme Court, a complaint does not suffice if it tenders "naked assertions devoid of further factual enhancement." *Iqbal*, 129 S.Ct at 1949 (internal quotations omitted).  Plaintiff's Complaint never sets forth when the conspiracy formed or what exact steps either Freddie Mac or Bank of America took in furtherance of the conspiracy.  It is a quintessential conclusory assertion that should be dismissed.  *See Gonzalez v. First Franklin Loan Services*, 09-cv-941, 2010 WL 144682, at *11 (E.D.Cal. Jan. 9, 2010) ("Plaintiff does not state any particulars regarding the Defendants' knowledge or agreement to injure her, the specific wrongful acts committed by the Defendants, or the harm she suffered.")

**2)     No Conspiracy to Commit Fraud (Fourth Cause of Action)**

The fourth cause of action is labeled "conspiracy to commit fraud and conversion."  Because he invokes fraud, this claim is subject to the heightened pleading standards of Fed. R. Civ. P. 9(b).  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).    "The particularity requirement of Rule 9(b) is designed to 'give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993).  To be sufficient, a plaintiff should allege the time, place and manner of the alleged fraudulent activities.  *Moore v. Kayport Package Express, Inc*., 885 F.2d 531,

540 (9th Cir. 1989); *see also Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (fraud allegations should include the "who, what, where, when and how").  A plaintiff must attribute particular fraudulent statements or acts to individual defendants.  *Moore*, 885 F.2d at 540.  Where, as here, the plaintiff alleges only corporate fraud, the plaintiff "should include the misrepresentations themselves with particularity and, where possible, the roles of the individual defendants in the misrepresentations." *Id*. at 540.

To say that Plaintiff does not meet this standard is an understatement.  Mr. Simon's Complaint never alleges any particular statement by anyone.  His almost exclusive use of the term "defendants" for his boilerplate allegations, rather than allegations of particular acts by an identified defendant is completely at odds with the requirements of Rule 9(b), and indeed of Rule 8.  Although he alleges that Freddie Mac is a director of MERS, Inc., and/or MERSCORP, Inc. (Compl., ¶ 67), this is nonsensical because Freddie Mac is corporation, not a human being capable of serving as a corporate director.  There is no substance to the fourth cause of action.

### 3)   MERS Could Serve as Beneficiary (Fifth Cause of Action)

In Plaintiff's view, MERS was a "sham beneficiary" of the deed of trust  (Compl., ¶ 69.)  He alleges that Defendants have conspired to utilize MERS in order to hide secondary market transactions from the public. (Compl., ¶ 71.)  These are stock allegations in defaulting borrowers' form Complaint.  To have an validity, the Court would have to conclude that the use of MERS as beneficiary of the deed of trust, as nominee for the lender, is somehow wrongful.  This District Court has considered this argument on a number of occasions, and has always held it mistaken.

This Court has thoroughly debunked attacks on the propriety of nonjudicial foreclosures due to the use of MERS in two recent opinions.  *Gomez v. Countrywide Bank, FSB*, No. 2:09-cv-01489, 2009 WL 3617650 (D.Nev. Oct. 26, 2009); *Coward v. First Magnus Fin. Corp*., No. 2:09-cv-01143, 2009 WL 3367398 (D.Nev. Oct. 14, 2009).[3]  The Court first noted that MERS was designated as "nominee" for the lender.  *Gomez*, 2009 WL 3617650, at *1.   Reviewing <u>Black's Law Dictionary</u>'s treatment of the term "nominee", *Gomez* concluded that, in context, MERS was functionally a limited agent, which

---

[3] The *Coward* decision essentially condenses the same analysis as that in *Gomez* into a single footnote.  *See* 2009 WL 3367398, at *8, n.1.

"clearly implies that the nominee granted authority as an agent to act on behalf of the nominator (holder of the promissory note) as to administration of the deed of trust[.]"  *Id.* at *1.  The Court went on to explain:

> "The trouble typically begins when a nominee substitutes a new trustee on the deed of trust, which it has the right to do as the holder's nominee. The substituted trustee then forecloses when the mortgagor/trustor defaults on the promissory note. The mortgagor/trustor then complains that the foreclosing trustee is acting wrongly because it does not itself hold the promissory note, or because it was not the original trustee on the deed of trust, or because the foreclosing trustee was substituted by an entity (usually MERS) that was not an agent of the original or subsequent holder of the note. Oftentimes, the argument the mortgagor/trustor makes is not clear. **But one thing is clear: so long as the note is in default and the foreclosing trustee is either the original trustee or has been substituted by the holder of the note or the holder's nominee, there is simply no defect in foreclosure, at least in states such as Nevada** where a trustee may foreclose non-judicially. *Id.* at *2 (emphasis added).

The *Gomez* decision further observed that even if the original note has been negotiated to a new holder, "it is probably the case that as a matter of law a subsequent holder ratifies a prior holder's assignment of nominees and trustees on a corresponding deed of trust by silence." 2009 WL 3617650, at *3.  This is simply an application of the principle that an assignment of the note carries the security with it. *Id.* at *3 (*citing Rodney v. Ariz. Bank*, 836 P.2d 434, 436 (Ariz.App. 1992)); *see also In re Golden Plan of Cal., Inc*., 829 F.2d 705, 708 n.2 (9th Cir. 1986) (physical transfer of note or deed of trust not necessary to convey an interest therein).  The Court rejected as "monstrously unreasonable" the argument implicit in all such form complaints that security instruments are nullified if not re-executed after the assignment of a note.  *Id.* at *3.

The *Gomez* opinion also addresses the use of MERS as a beneficiary, with which Plaintiff takes issue here.  *Gomez* attributes much confusion to designating MERS as the beneficiary, but it points out that merely calling MERS the "nominee" of the lender for purposes of administering the deed of trust conveys all of the power necessary for MERS to exercise its customary role in nonjudicial foreclosure. *Id.* at *2.

Plaintiff pleads that the use of MERS was a conspiracy to commit fraud, he again must meet the Rule 9(b) standard.  *E.g.*, *Silvas v. GMAC Mortgage, LLC*, No. 09-265-PHX-GMS, 2009 WL 4573234, at *6 (D.Ariz. Dec. 1, 2009).  As discussed previously, *see* section IV(F)(2), *supra*, this Complaint does not even approach pleading fraud with particularity.

**G.     Plaintiff Is Not Entitled to an Inspection and Accounting (Sixth Cause of Action)**

Plaintiff's sixth cause of action for an accounting takes the form of an assertion that "defendants" charged excessive interest and fees on his loan.  (*See* Compl., ¶ 80).  A claim for an accounting at law must be "tethered to relevant actionable claims[,]" or it cannot proceed beyond the pleading stage.  *Hafiz v. GreenPoint Mortgage Funding, Inc.*, 652 F.Supp.2d 1039, 1043-44 (N.D.Cal. 2009).  This Plaintiff does not tie his accounting request to any substantive action.  Nor can he invoke an equitable accounting, which ordinarily requires a fiduciary relationship and a sum owed to the plaintiff.  *Id.* at *3; *see Kritzer v. Lancaster,* 214 P.2d 407 (Cal. Ct. App. 1950). Plaintiff has not pled anything to suggest that he has a fiduciary relationship with Bank of America or Freddie Mac.  In fact, he has not pled that he has any specific relationship to either of those parties.  It would make no difference if he had because in Nevada borrowers and lenders are considered adversaries, not fiduciaries.  *Gomez*, 2009 WL 3617650, at *6.

The accounting cause of action should be dismissed.

**H.     No Negligent Infliction of Emotional Distress (Seventh Cause of Action)**

Whether or not Nevada would recognize a claim for emotional distress based caused by Defendant's negligence, the seventh cause of action fails to state a claim for relief because Mr. Simon has not pled the elements of the basic tort.  To plead negligence, a plaintiff must allege the traditional (1) duty, (2) breach, (3) causation, and (4) damages.  *E.g., Hammerstein v. Jean Dev. West*, 111 Nev. 1471, 1475, 907 P.2d 975, 977 (1995).

Plaintiff has not clearly pled what role, if any, Bank of America and Freddie Mac had in his loan.  Assuming they had some involvement in originating the loan, this would not create any duty to Mr. Simon.  A financial institution owes no duty to borrowers when its role does not exceed that of a mere lender of money.  *E.g., Velasquez*, 2009 WL 2338852, at *5 (*citing Nymark v. Heart Federal Savings and Loan Assn*., 231 Cal.App.3d 1089, 1096 (Cal. Ct. App. 1991)).  Mr. Simon contends that he has been damaged by the supposedly unlawful foreclosure process.  That allegation describes something nearer to the servicing role in the loan transaction.  To the extent he argues that Defendants serviced his loan, Plaintiff still does not state a claim for negligence.  Like lenders, servicers owe borrowers no duty actionable in negligence if they do not exceed their conventional duties as servicers.

1  *Somera v. IndyMac Fed. Bank, FSB*, No. 2:09-cv-1947, 2010 WL 761221, at *5 (E.D.Cal. March 2,

2  2010) (citing *Nymark* and concluding "a loan servicer does not have a duty to a borrower when its

3  involvement does not exceed the scope of its role as a mere loan servicing company"); *see Hendrickson*

4  *v. Popular Mortgage Servicing, Inc.*, No. C 09-00472; 2009 WL 1455491, at *7 (N.D.Cal. May 21,

5  2009) (dismissing negligence claim for failure to allege any duties beyond those of servicing the loan)

6  Nor has Plaintiff pled any breach that supposedly caused him damage.  Although he complains

7  of an illegal foreclosure process, he does not elaborate on what part of the process is illegal. If he means

8  that the use of MERS somehow makes the foreclosure process wrongful, that argument has been

9  repeatedly debunked.  *See* section IV(E), *supra*.

10  Plaintiff completely fails to plead any actual emotional distress, relying as usual on conclusory

11  statements.  (Compl., ¶ 89.)  Nor does he allege any extreme or outrageous conduct, as Nevada requires

12  for a plaintiff to prevail on this cause of action.  *See Preston v. City of North Las Vegas*, 03-cv-1165,

13  2007 WL 1016995, at *5 (D.Nev. March 30, 2007).  The *Preston* court noted the Nevada Supreme

14  Court's comments that insomnia and general physical and emotional discomfort did not rise to the level

15  needed to state a negligent infliction of emotional distress claim.  *Id.* at *5 (*citing Chowdry v. NLVH,*

16  *Inc.*, 109 Nev. 478, 851 P.2d 849 (Nev. 2003)).

17  Notwithstanding how he labeled the cause of action, Plaintiff also wishes to recover money

18  damages for the Defendants' alleged negligence.  This effort is thwarted by the economic loss doctrine,

19  which precludes recovery in tort for purely economic losses arising out of the breach of a contract.

20  *Calloway v. City of Reno*, 116 Nev. 250, 993 P.2d 1259 (2000).  It applies in the lender-borrower

21  context, including in defaulting borrowers' actions against mortgage lenders.  *See Velasquez*, 2009 WL

22  2338852, at *5.

23  Plaintiff fails to state a claim for negligent infliction of emotional distress.

24  **I.    Plaintiff Cannot Quiet Title to the Property (Eighth Cause of Action)**

25  "A quiet title claim requires a plaintiff to allege that the defendant is unlawfully asserting an

26  adverse claim to title to real property."  *Kemberling v. Ocwen Loan Servicing, LLC*, No. 2:09-cv-00567,

27  2009 WL 5039495, at *2 (D.Nev. Dec. 15, 2009).  Here, Plaintiff alleges that Defendants have either

28  / / /

1  recorded a notice of default or completed the sale.  He does not clearly contend that either Freddie Mac

2  or Bank of America actually asserts a claim to title to the property.

3     Second, because an action to quiet title is equitable in nature, *see MacDonald v. Krause*, 77

4  Nev. 312, 317-18, 362 P.2d 724 (1961), it is incumbent upon Plaintiff to show his right to such

5  equitable relief.  The oft-quoted maxim is that "in seeking equity, a party is required to do equity."

6  *Transaero Land & Dev. Co. v. Land Title Co. of Nev., Inc*., 108 Nev. 997, 1001, 842 P.2d 716 (1992)

7  (internal quotation omitted).  In this case, Plaintiff executed a promissory note and voluntarily executed

8  a deed of trust.  Assuming Bank of America or Freddie Mac have some interest in his loan, quieting

9  title against them would deprive a creditor of security.  This would be an inequitable result.  Where a

10  defaulting mortgagor or trustor attempts to quiet title against the mortgagee, equity is served by

11  requiring the debtor purporting to quiet title to pay the full amount of the outstanding debt.  *See, e.g.*,

12  *Trusty v. Ray*, 249 P.2d 814 (Idaho 1951); *Shimpones v. Stickney*, 28 P.2d 637 (Cal. 1934); *Cosper v.*

13  *The Valley Bank*, 237 P. 175 (Ariz. 1925); *see also Mix v. Sodd*, 126 Cal.App.3d 386, 390 (Cal. Ct.

14  App. 1981) (no quiet title action may lie without paying the debt, even if debt is otherwise

15  unenforceable).  To quiet title, Plaintiff should be required to pay his debt.  He has not pled that he will

16  do so, nor, in light of his apparent default on much smaller monthly payment obligations, is it plausible

17  that he could.

18     For these reasons, Mr. Simon cannot quiet title to the property.

19  **J. No Breach of the Implied Covenant of Good Faith (Ninth Cause of Action)**

20     Plaintiff's ninth cause of action invokes the implied covenant of good faith and fair dealing; it

21  makes no sense.  The implied covenant allows contracting parties to recover damages when another

22  contracting party performs under the contract in a manner that is unfaithful to purposes of the contract.

23  *See, e.g., Hilton Hotels Corp. v. Butch Lewis Prods., Inc*., 808 P.2d 919, 923 (Nev. 1991).  A breach

24  occurs when a party literally complies but "deliberately contravenes the intention and spirit of the

25  contract[.]"  *Id*. at 922-23.

26     Mr. Simon does not specify to what contract he and either Bank of America or Freddie Mac are

27  parties.  Instead, he alleges that defendants violated a "duty to pay at least as much consideration to

28  Plaintiffs' financial interests as to their own financial interests" and a duty to comply with Nevada law

1   and HAMP guidelines.  (Compl., ¶¶ 99(a)-(b).)  While Defendants may have been required to comply

2   with certain Nevada laws or HAMP guidelines, Plaintiff does not explain how this relates to any

3   contractual duty to him.  He alleges conclusorily that Defendants failed or refused to modify his loan or

4   seek alternatives to foreclosure.  (*See* Compl., ¶ 100.)  Nothing in the Complaint suggests what

5   precisely were the contractual duties of the Defendants or how they complied with them in a manner

6   that violated their spirit.  Absent such factual allegations, the claim fails to state a viable cause of

7   action.  *See Aguilar*, 2010 WL 185951, at *6.

8          Plaintiff's incomprehensible ninth cause of action cannot survive this Motion to Dismiss.

9   **K.     No Injunctive Relief (Tenth Cause of Action)**

10         The request for injunctive relief does not state a claim for which relief can be had because it is a

11  remedy, not an independent cause of action.  *E.g., Alandia v. U.S. Bank, N.A.*, No. 2:03-cv-1165-LDG-

12  PAL, 2009 WL 4611442, at *3 (D.Nev. Dec. 1, 2009).  It is appropriate to dismiss the claim as a

13  cause of action in favor of construing it as a requested remedy.  *Cox Comm'ns L.P. v. City of San*

14  *Marcos*, 204 F.Supp.2d 1272, 1283 (S.D.Cal. 2002).  As argued throughout this Memorandum, there

15  are no valid claims for relief in the Complaint on which to hook an injunctive remedy.

16         In addition, because Plaintiff invokes an equitable remedy, he should have to do equity.

17  Nothing in the Complaint suggests he is prepared to make payments on his loan or settle his debt, as

18  would be appropriate if he were to halt any ongoing foreclosure.

19         The tenth cause of action should be dismissed.

20  **L.     No Declaratory Relief (Eleventh Cause of Action)**

21         Plaintiff next seeks a declaratory judgment that Bank of America "continues to violate truth in

22  lending laws" (Compl., ¶ 121), as well as to settle disputes as to the rights and obligations under the

23  "loan agreements and contract at issue herein." (Compl., ¶ 120.)  Again, declaratory relief is a remedy,

24  not a cause of action.  *Aguilar*, 2010 WL 185951, at *4.  Nowhere in the Complaint does Plaintiff set

25  out the terms of any agreement, making it impossible to understand what dispute needs to be resolved.

26  Although he clearly takes issue with the use of MERS in the transaction, there is no controversy to be

27  resolved related to MERS for the reasons in section IV(F)(3), of this Memorandum.

28  / / /

Plaintiff apparently means to allege that defendants have violated the Truth-in-Lending Act (TILA), 15 U.S.C. § 1601, *et seq*. He implies that required disclosures such as the APR (annual percentage rate of interest), finance charges and other information were not properly made. (Compl., ¶ 117.) Assuming Bank of America had some responsibility to make these disclosures, which is not obvious from the allegations of the Complaint, there is still no genuine dispute to be resolved under TILA. Any TILA claim Mr. Simon would advance in this action has been filed years after the applicable statute of limitations or statute of repose ran.

A TILA action to recover damages must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). The pertinent date of occurrence is the closing date. *See King v. California*, 784 F.2d 910, 915 (9th Cir. 1986). The loan at issue closed in June 2005. (Compl. ¶ 2.). This Complaint was filed in January 2010, more than three years past the one year cut-off. Although the time period may be equitably tolled, *id*. at 915, Plaintiff can show no set of facts to justify equitable tolling in this case. *E.g*., *Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899, 902 (9th Cir. 2003) (dismissing TILA claim, despite request for equitable tolling, because Plaintiff did not allege any conduct that would have prevented discovery of the alleged TILA violations during the limitations period). Nor can Plaintiff rescind the loan under TILA, which is subject to a three-year statute of repose. 15 U.S.C. § 1635(f) ("the right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property"); *see Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 419 (1998); *Miguel v Country Funding Corp*., 309 F.3d 1161 (9th Cir. 2002) (TILA rescission right cannot be equitably tolled). A TILA rescission claim is also futile because this was a purchase money mortgage transaction for which no rescission right exists. *See, e.g., Betancourt v. Countrywide Home Loans, Inc*., 344 F.Supp.2d 1253, 1260-61 (D. Colo. 2004).

There is no live controversy requiring a declaration of rights. The eleventh cause of action should be dismissed.

**M.     No Right to Rescission (Twelfth Cause of Action)**

Plaintiff's final cause of action requests to rescind the loan transaction. Rescission is another equitable remedy, rather than a cause of action. *Aguilar*, 2010 WL 185951, at *4. Because none of the

/ / /

1  substantive claims for relief can survive this motion to dismiss, there is no basis for Mr. Simon to

2  rescind the loan. *See id.*

3      The twelfth cause of action should be dismissed.

4                          **IV.    CONCLUSION**

5      This vague Complaint consists entirely of boilerplate allegations when it is comprehensible at

6  all.  For the reasons set forth in this Memorandum, Defendants Bank of America and Freddie Mac

7  respectfully request that the Complaint be dismissed with prejudice.

8      RESPECTFULLY SUBMITTED this 23rd day of March, 2010.

9                          **AKERMAN SENTERFITT LLP**

10

11                          /s/ Ariel Stern_____
                            ARIEL E. STERN
12                          Nevada Bar No. 8276
                            400 South Fourth Street, Suite 450
13                          Las Vegas, Nevada 89101

14                          *Attorneys for Defendants Bank of America*
                            *and Federal Home Loan Mortgage*
15                          *Corporation*

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**CERTIFICATE OF SERVICE**</u>

      I HEREBY CERTIFY that, on the 23rd day of March, 2010 and pursuant to FRCP 5(b), I served via CM/ECF and/or deposited for mailing in the U. S. Mail a true and correct copy of the foregoing **Motion to Dismiss**, postage prepaid and addressed to:

MR. JON J. SIMON
2490 Begonia Valley
Henderson, Nevada  89074

*Plaintiff in Proper Person*

                       /s/ Ariel Stern
                       _____
                       An employee of Akerman Senterfitt LLP