# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

|  |  |
|---|---|
| JON J. SIMON, | ) Case No.: 10-cv-00300-GMN-LRL |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) **ORDER** |
| | ) |
| BANK OF AMERICA, N.A., FEDERAL | ) (Defendants' Motion to Dismiss—#10; |
| HOME LOAN MORTGAGE | ) Plaintiff's Motion to Remand—#16) |
| CORPORATION, MORTGAGE | ) |
| ELECTRONIC SYSTEMS, INC., and | ) |
| MERSCORP, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## INTRODUCTION

Before the Court are Defendants Bank of America, N.A., and Federal Home Loan Mortgage Corporation's Motion to Dismiss (#10).  Defendants Merscorp, Inc. and Mortgage Electronic Systems, Inc. filed a joinder (#11) to the motion.  Plaintiff failed to timely oppose the motion and filed a Motion to Extend Time to Response to Motion to Dismiss (#17), which was denied by this Court's May 24, 2010 Order, entered by Judge Jones.

Also before the Court is Plaintiff's Motion to Remand (#16).  Defendants Bank of America, N.A., and Federal Home Loan Mortgage Corporation's filed a timely Response in Opposition (#20), which is joined by Defendants Merscorp, Inc. and Mortgage Electronic Systems, Inc. (#21).  Plaintiff did not file a reply.

## BACKGROUND

This is a mortgage foreclosure case.  Plaintiff Jon Simon, who filed this complaint pro se, alleges that he owns the real property at 2490 Begonia Valley, Henderson, Nevada (hereinafter the "Property").  (Complaint ¶ 10 at pg. 3, #1).  Plaintiff asserts that he took out a loan on June

Page 1 of 23

23, 2005, for the purpose of purchasing the Property, secured by a promissory note and a deed of trust.  (*Id.* ¶ 2 at pg. 4).  It appears that MERS was designated as the beneficiary on the deed of trust.  (*Id.* ¶ 11 at pg. 6).

Plaintiff filed the instant action on January 29, 2010, in Nevada state court.  (*Id.*).  The complaint appears to be a form complaint, similar to many which have inundated the Court over the last year.  Plaintiff brings allegations against Defendants Bank of America ("BOA"), Federal Home Loan Mortgage Corporation ("Freddie Mac"), Merscorp, Inc., and Mortgage Electronic Systems, Inc. (collectively with Merscorp, "MERS").  Plaintiff alleges the following causes of action: 1) Violations of Unfair Lending Practices under N.R.S. § 598D; 2) Deceptive Trade Practices; 3) Wrongful Foreclosure; 4) Conspiracy to Commit Fraud and Conversion; 5) Conspiracy to Commit Fraud Related to MERS System; 6) Inspection and Accounting; 7) Negligent Infliction of Emotional Distress; 8) Quiet Title; 9) Breach of Good Faith and Fair Dealing; 10) Injunctive Relief; 11) Declaratory Relief; and 12) Rescission.

Plaintiff's claims appear to be based on three allegations: 1) Defendants should not have lent Plaintiff the money to purchase the Property, or Defendants did not sufficiently disclose the risk to Plaintiff; 2) Defendants have improperly threatened to foreclose, though the stage of foreclosure is unclear; and 3) generalized claims of fraud against the MERS system as a whole.

Plaintiff also mailed a request for a Temporary Restraining Order and Preliminary Injunction to Defendants prior to removal, but this motion was never filed in state court or before this Court.  (TRO Request, #1 Ex. B).  Defendants removed to this Court on March 4, 2010, and subsequently filed a motion to dismiss on March 23, 2010.  (Motion to Dismiss, #10; Joinder, #11).  Included in Defendants' petition for removal was a copy of the TRO which was nevery filed by Plaintiff in state court.  Plaintiff filed a motion to remand on April 4, 2010. (Motion to Remand, #16).

///

1

**DISCUSSION**

2

**I.      Motion to Remand (#16)**

3

Though filed later, Plaintiff's motion to remand should be addressed before the motion to

4

dismiss, as remand involves the jurisdiction of the Court.  Plaintiff argues that Defendants'

5

removal was procedurally improper and that there is no subject matter jurisdiction over

6

Plaintiff's claims.   Defendants counter that the removal was procedurally proper, that Plaintiff's

7

motion for remand is untimely, and that this Court has jurisdiction based both on federal question

8

as well as diversity.  Defendants are correct.

9

**A.      Legal Standard for Remand**

10

A party may make a motion to remand "on the basis of any defect other than lack of subject

11

matter jurisdiction . . . within 30 days after the filing of the notice of removal under section

12

1446(a)."  28 U.S.C. § 1447(c).  If the Court decides to remand a case, such a decision "is not

13

reviewable on appeal or otherwise," except where the case was removed pursuant to § 1443,

14

which governs the removal of civil rights cases.  *Id.* § 1447(d).  However, Section 1447 states:

15

"If at any time before final judgment it appears that the district court lacks subject matter

16

jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).  There is no discretion with the

17

Court to hear matters over which the Court has no jurisdiction.

18

Removal is proper if the case could have been originally filed in federal court.  28 U.S.C.

19

§ 1441(a).  Removal must occur within thirty days after the defendant is served with the first

20

removable pleading, such as the complaint, and all defendants must join in the removal.  28

21

U.S.C. § 1446(b).  "Where fewer than all the defendants have joined in a removal action, the

22

removing party has the burden under section 1446(a) to explain affirmatively the absence of any

23

co-defendants in the notice for removal."  *Prize Frize, Inc. v. Matrix (U.S.) Inc.*, 167 F.3d 1261,

24

1266 (9th Cir. 1999), *superseded by statute on other grounds by* 28 U.S.C. § 1453(b).  The party

25

seeking removal bears the burden of showing that removal is proper.  *Emrich v. Touche Ross &*

*Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988).  Additionally, there is a strong presumption against removal jurisdiction.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

### B.    Analysis

Plaintiff's first argument is that removal was procedurally defective.  But as a preliminary matter, it must be noted that Plaintiff's motion to remand is untimely as it was filed on April 15, 2010, well over the thirty days provided in 28 U.S.C. § 1447(c).  Regardless, Plaintiff's claim that he never received a copy of the summons is insufficient to defeat remand.  In his filings with the Nevada state court and his complaint, Plaintiff stated that his address was 2490 Begonia Valley, Henderson, Nevada 89074.  (Complaint ¶ 10 at pg. 3, #1).  Defendants served Plaintiff through mail, but service was returned to counsel as undeliverable or that Plaintiff did not live at the address.  (Linda Kapcia Declaration ¶ 3, #19 Ex. A).  Similarly, this Court has been unable to provide service to Plaintiff.  (*See* Docket No. 14, Mail Returned as Undeliverable re #12 Klingele Minute Order addressed to Jon J. Simon).  It does not appear that any defect in service of the notice of removal was due to any fault on Defendants' part.

Plaintiff also claims that Defendants' removal was improper because Defendants' attorney did not have the required consent of all Defendants to remove.  Very simply, that appears to be untrue.  At the time this matter was removed, all Defendants were represented by the same attorney, Ariel Stern.  Since the removal Mr. Stern no longer represents MERS, but he did represent all parties at the time of removal and attested to their consent to remove when he filed the petition for removal.  This is adequate to show that all Defendants did consent to removal, and Plaintiff has provided no evidence or argumentation to the contrary.

As to the subject matter jurisdiction, it seems clear that this Court has jurisdiction.  While both parties spend a substantial amount of their pleadings discussing federal question jurisdiction, such an inquiry is unnecessary.  This action was removed on the grounds of diversity jurisdiction, pursuant 18 U.S.C. § 1332.  (Petition for Removal ¶ 4, #1).  In order to

1   bring a suit pursuant to § 1332, the parties must enjoy complete diversity and the amount in

2   controversy must exceed $75,000.  Plaintiff fails to address diversity, but there appears to be no

3   legitimate contention that requirements of § 1332 are not met.  Plaintiff is domiciled in Nevada.

4   (Complaint ¶ 1 at pg. 2, #1).  Plaintiff concedes that Defendants are diverse in his complaint,

5   acknowledging that Freddie Mac is a Virginia corporation and MERS is a Delaware corporation.

6   (*Id.* ¶ 6 at pg. 3).  While neither Defendants nor Plaintiff state where BOA is domiciled, both

7   parties agree that it is not a Nevada corporation.  (*Id.*; Petition for Removal ¶ 7, # 1).  Further,

8   there is no argument that the amount in controversy does not exceed $75,000.00.  Accordingly,

9   removal was proper and Plaintiff's motion for remand should be denied.

10  **II.    Motion to Dismiss (#10)**

11          On June 15, 2010, this Court held a hearing regarding Plaintiff's request for injunctive

12  relief.  As noted above, Plaintiff never filed a motion for a temporary restraining order of

13  preliminary injunction with this Court or state court, but Defendants included his unfiled motion

14  in their petition for removal.  (TRO Request, #1 Ex. B).  Plaintiff did not appear at the hearing.

15  Prior to the hearing, pursuant to the Court's request, Defendants filed with the Court copies of

16  public documents involving the subject Property, including: 1) Deed of Trust, 2) Notice of

17  Default and Election to Sell, 3) Notice of Sale, 4) Substitution of Trustee, and 5) Assignment of

18  Deed of Trust.  The Court takes judicial notice of the documents.  *See Mack v. S. Bay Beer*

19  *Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

20          **A.    Rule 12(b)(6) Legal Standard**

21          Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

22  claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of

23  what the . . . claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47

24  (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action

25  that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule

12(b)(6) tests the complaint's sufficiency.  *See North Star Int'l. v. Arizona Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554, 127 S.Ct. 1955, 1964 (2007).  However, facts must be sufficient to edge a complaint from the conceivable to the plausible in order to state a claim.  Id. In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff.  *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

The Supreme Court recently clarified that, in order to avoid a motion to dismiss, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, ---- U.S. ----, 129 S.Ct. 1937, 1949 (2009).  The Court in *Ashcroft* further stated "[w]here a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.*  Therefore, merely making an allegation is not enough to survive a motion to dismiss; facts that a particular defendant may plausibly be liable for the alleged conduct must be pled.

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . .  However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss."  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted).  Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a

Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Fed. R. Evid. 201, a court may take judicial notice of "matters of public record." *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

Furthermore, under Rule 9(b), circumstances constituting fraud or mistake must be stated with particularity. Fed. R. Civ. P. 9(b). A plaintiff must plead facts such as "he bought a house from defendant, that the defendant assured him that it was in perfect shape, and that in fact the house turned out to be built on a landfill . . . ." *Warshaw v. Xoma Corp.*, 74 F.3d 955, 960 (9th Cir 1996) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1995) (en banc)). Under Rule 9(b), a plaintiff must "state with particularity the circumstances constituting the fraud." Fed. R. Civ. Pro. 9(b). This has been construed to require a plaintiff to "state precisely the time, place and nature of the misleading statements, misrepresentations and specific acts of fraud." *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994), *cert. denied*, 516 U.S. 810 (1995). The plaintiff must also "set forth an explanation as to why the statement or omission complained of was false and misleading." *In re GlenFed Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994).

### B.     Local Rule 7-2

According to Local Rule 7-2, "points and authorities in response shall be filed and served by an opposing party fifteen (15) days after service of the motion." D. Nev. R. 7-2(b). Further, failure to comply with this rule "shall constitute a consent to the granting of the motion." D. Nev. R. 7-2(c). Plaintiff failed to file any opposition to Defendants' motion to dismiss. The Court should, according to Local Rule 7-2, consider this failure a waiver to the Court granting Defendants' motion.

///

C.     **Analysis**

1.     **Preemption**

Defendants' first argument for dismissal of Plaintiff's suit is that many of Plaintiff's claims are preempted by federal law.  The Supremacy Clause of the Constitution states that the laws of the United States "shall be the supreme law of the Land."  U.S. Const. Art. VI, cl. 2. Preemption may take three forms: (1) express preemption, which occurs when Congress states its intent to preempt; (2) field preemption, which occurs when preemption is implied by the nature of the regulatory scheme; and (3) conflict preemption, which occurs when state regulation makes compliance with federal law impossible.  *See, e.g.*, *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149–50 (9th Cir. 2000).  While there is usually a presumption against federal preemption of state law, this usual presumption "is inapplicable to federal banking regulation." *Rose v. Chase Bank USA, N.A.*, 513 F.3d 1032, 1037 (9th Cir. 2008) (quoting *Wells Fargo Bank, N.A. v. Boutris*, 418 F.3d 949, 956 (9th Cir. 2005)).   But even absent explicit preemptive language, Congress's intent to supersede state law altogether may be inferred because "[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it" because "the Act of Congress may touch a field in which the federal system will be assumed to preclude enforcement of state laws on the same subject." *Rice*, 331 U.S. at 231.  Further, "[f]ederal regulations have no less preemptive effect than federal statutes."  *Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta*¸458 U.S. 141, 153, 102 S. Ct. 3014 (1982).

The relevant regulation at issue in this case was promulgated by the Office of Comptroller of the Currency ("OCC").  This is the agency charged with administering the National Bank Act, which vests national banks such as Defendant BOA "with authority to exercise 'all such incidental powers as shall be necessary to carry on the business of banking.'" *Martinez v. Wells Fargo Home Mortgage, Inc.*, 589 F.3d 549, 554–55 (9th 2010) (quoting 12

U.S.C. § 24 (Seventh)).  The OCC provides a list of national banks, which includes BOA.[1]  The OCC has promulgated the regulation found at 12 C.F.R. § 34.4(a), which provides that national banks may make real estate loans without regard to state law limitations, *inter alia*, in the following areas:

> (4)   The terms of credit, including schedule for repayment of principal and interest, amortization of loans, balance, payments due, minimum payments, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
>
> . . .
>
> (9)   Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents;
>
> (10)  Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;

Further, 12 C.F.R. § 34.4(b) states that "[s]tate laws on the following subjects are not inconsistent with the real estate lending powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' real estate lending powers."  The subjects listed include contracts and torts among other areas of law traditionally controlled by the states.

The Ninth Circuit has addressed this issue in *Martinez v. Wells Fargo Home Mortgage, Inc.*  The circuit court was addressing whether or not Plaintiff's claim under California's Unfair Competition Law was preempted by the National Bank Act.  *Martinez*, 598 F.3d at 555.  The plaintiff claimed that the defendant committed unfair competition by overcharging underwriting fees and marking up tax service fees and engaged fraudulent practices by failing to disclose

---

[1] This is available at http://www.occ.treas.gov/foia/foia.htm.  BOA appears on page 2 of the downloadable pdf document.  The Court takes judicial notice of this information provided on the government website.  *See Mack*, 798 F.2d at 1282; *Pioneer Lending, Inc. v. DuFauchard*, No. Civ. S-06-1445 LKK/PAN, 2006 WL 2053486, at *13 n.24 (E.D. Cal. July 21, 2006).

1    actual costs of its underwriting and tax services.  *Id.* at 554.  The court acknowledge that the

2    National Bank Act does not preempt the field of banking and that "Federally chartered banks are

3    subject to state laws of general application in their daily business to the extent such laws do not

4    conflict with the letter or the general purposes of the [Act]."  *Id.* at 555 (quoting *Watters v.*

5    *Wachovia Bank, N.A.*, 550 U.S. 1, 11, 127 S. Ct. 1559 (2007)).  Accordingly, "[s]tate laws of

6    general application, which merely require all business (including national banks) to refrain from

7    fraudulent, unfair, or illegal behavior, do not necessarily impair a bank's ability to exercise its

8    real estate lending powers." *Id.*  But the court then distinguished claims of express deception or

9    misrepresentation from omissions, and concluded that the plaintiff's claims were preempted.  *Id.*

10   at 556–57.  Plaintiff's claims as to the fee setting was preempted because the National Bank Act

11   acknowledged that these were business decisions to be made by each bank. *Id.* at 556.  Plaintiff's

12   claims as to failure to disclose various fees and costs were preempted because the 12 C.F.R. §

13   34.4 expressly authorizes banks to "make real estate loans . . . without regard to state law

14   limitations concerning . . . [d]isclosure and advertising, including laws requiring specific

15   statements, information, or other content to be included in [credit-related documents]." *Id.* at

16   556–57 (quoting 12 C.F.R. § 34.4).

17        In the instant case, Defendant alleges that Plaintiff's first two causes of action are

18   preempted: Violations of Unfair Lending Practices under N.R.S. § 598D.100 and Deceptive

19   Trade Practices.

20                  a)      **Violations of Unfair Lending Practices under N.R.S. §**

21                          **598D.100**

22        In support of his first cause of action, Plaintiff claims that Defendants failed to

23   sufficiently evaluate whether or not Plaintiff would truly be able to repay the loan.  (Complaint

24   ¶¶ 29, 31, #1).  Plaintiff also alleges that "Defendants knew or should have known that the

25   originators of the loans made promises to the Plaintiff that refinancing would be available when

or if any monthly payments on the Adjustable Rate Note increased."  (*Id.* ¶ 32).

Preemption seems applicable to Plaintiff's first cause of action, at least in part.  Insofar as N.R.S. § 598D.100 attempts to impose additional obligations on a lender, it is preempted due to 12 C.F.R. § 34.4.  This seems required by *Martinez v. Wells Fargo Home Mortgage, Inc.*, and is consistent with other district court decisions as well.  *See Kilgore v. Keybank*, No. C08-2958 TEH, at *10–14 (N.D. Cal. Apr. 12, 2010) (holding that a claim under California state law that required compliance beyond what is mandated by the National Bank Act was preempted); *O'Donnel v. Bank of America*, No. C-07-04500 RMW, 2010 WL 934153, at *4–5 (N.D. Cal. Mar. 15, 2010) (distinguishing between fraudulent omissions and deliberate misrepresentations, holding that fraudulent omissions and unfair competition claims under state law were preempted).  N.R.S. § 598D.100 prohibits lenders from "[k]nowingly or intentionally make a home loan, other than a reverse mortgage, to a borrower, including, without limitation, a low-document home loan, no-document home loan or stated-document home loan, without determining, using any commercially reasonable means or mechanism, that the borrower has the ability to repay the home loan."  Plaintiff uses this statute to impose additional disclosure requirements on Defendants.  To the extent that this statute requires these additional disclosures from national banks, its application to national banks is preempted.  In no way does this affect the state's regulation of banks that are not national banks.  Additionally, the statute may still be used to enforce the requirement that national banks not make fraudulent statements.  The preemption of this statute is simply limited to the extent that it imposes additional disclosure requirements.

Plaintiff also claims there were deliberate misrepresentations that he would be able to refinance.  But this does not seem to even fall within N.R.S. § 598D.100.  While misrepresentations of the nature alleged by Plaintiff may be actionable under some other theory, N.R.S. § 598D.100 does not provide any prohibition on such communications.  Further,

1    notwithstanding preemption, the loan transaction alleged by Plaintiff does not fall within the

2    scope of N.R.S. § 589D nor has Plaintiff even alleged that any of the Defendants were the

3    originating lender.  In fact, according to the Deed of Trust, none of Defendants were the original

4    lender.  (Deed of Trust, #28 Ex. A).

5           Further, in 2005, when the lending transaction occurred, the definition of home loan in

6    N.R.S. § 598D.040 was as follows:

7           'Home loan' means a consumer credit transaction that:

8        1.      Is secured by a mortgage loan which involves real property located within
                 this State; and

9

10       2.      Constitutes a mortgage under § 152 of the Home Ownership and Equity
                 Protection Act of 1994, 15 U.S.C. § 1602(aa) [HOEPA], and the
11               regulations adopted by the Board of Governors of the Federal Reserve
                 System pursuant thereto, including, without limitation, 12 C.F.R. § 226.32.

12   That federal statute referenced in § 598D.040 specifically excluded "residential mortgage

13   transactions," which are based on a purchase money loan, from the definition of the residential

14   mortgage transactions to which HOEPA applies.  Therefore, this same exclusion was

15   incorporated in the 2005 version of N.R.S. § 598D.040.  *See e.g., Castro v. Executive Trustee

16   Servs., LLC*, No. CV-08-2156-PHX-LOA, 2009 WL 438683, at *7 n.9 (D.Ariz. Feb. 23, 2009)

17   ("'HOEPA does not apply to, *inter alia*, 'residential mortgage transactions.'").  As statutes are

18   presumed to operate only prospectively, and there is no evidence of statutory intent to the

19   contrary, Plaintiff's loan, as a residential mortgage transaction, was not subject to N.R.S. §

20   598D.040.

21          For all of these reasons dismissal with prejudice is appropriate for Plaintiff's first claim

22   for relief.

23                 b)      **Deceptive Trade Practices**

24          Defendants also argue that Plaintiff's Deceptive Trade Practices claim is preempted.  In

25   Plaintiff's second cause of action, he alleges that Defendants knowingly made false

representations to Plaintiff in violation of N.R.S. §§ 598.0915 and 598.0923.  (Complaint ¶ 36, #1).  Section 598.0915(15) prohibits "[k]nowingly mak[ing] any other false representation in a transaction."  Section 598.0923(2) prohibits failing "to disclose a material fact in connection with the sale or lease of goods or services."  Plaintiff also alleges that "Defendants did not furnish Plaintiff [with] the correct Notice of Servicing that the loan may be assigned, sold or transferred to any other person in violation of 12 U.S.C. 2605(a)." (Complaint ¶ 39, #1).

        As with the previous cause of action, to the extent that Plaintiff claims that the state statute imposes an additional burden in providing notices to Plaintiff regarding his loan transaction, Plaintiff's claim under state law is preempted by federal law.  Plaintiff's claim of defective Notice of Servicing may not be brought under state statute.  If it violated federal law and there is a private right of action, Plaintiff may be able to bring such a claim under the federal statute, but not N.R.S. §§ 598.0915 or 598.0923.

        However, Plaintiff's claims of misrepresentation, are not preempted by the National Bank Act.  Plaintiff specifically claims that Defendants knowingly made a false representation in a transaction.  As discussed above, such a claim is not preempted by the National Bank Act.  *See Martinez*, 598 F.3d at 556–57.  Accordingly, the Court should examine whether or not Plaintiff has stated a claim for relief for deceptive trade practices.

        While the Nevada Supreme Court does not appear to have dealt with the elements of a private Nevada Deceptive Trade Practices Act ("NDTPA"), United States District Court Judge Pro recently held that the elements of a NDTPA violation are as follows: (1) an act of consumer fraud by the defendant (2) causing plaintiff (3) damage.  *See Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 652 (D. Nev. 2009).  Plaintiff has failed to adequately plead such a claim under Federal Rule of Civil Procedure 8(a) and 9(b).

        First, as noted by Defendant, Plaintiff has failed to allege any specific misrepresentations, which would constitute actionable fraud.  Further, there are no plausible damages alleged, which

flow from the failure to provide a notice of transfer of servicing rights.  Any damages from the transfer of the servicing rights are alleged only in generalities, blaming such actions for the crash of the real estate market and the national economy.  Finally, the statute of limitations for claims under N.R.S. §§ 598.0915 and 598.0923 is four years.  N.R.S. § 11.190(2)(d).  While the statute does have tolling provision adopting the discovery rule, Plaintiff has not claimed that the alleged infractions were recently discovered or couldn't have been discovered with due diligence previously.  Plaintiff's suit was filed four and half year after the alleged infractions took place during the lending transaction.  Accordingly, Plaintiff's claims are time barred, and in conjunction with the other reasons discussed above, dismissal is appropriate.

### ii.    Plaintiff's Other State Law Causes of Action

#### a)    Wrongful Foreclosure

"An action for the tort of wrongful foreclosure will lie if the trustor or mortgagor can establish that at the time the power of sale was exercised or the foreclosure occurred, no breach of condition or failure of performance existed . . . ." *Collins v. Union Fed. Sav. & Loan Ass'n*, 99 Nev. 284, 304, 662 P.2d 610, 623 (Nev. 1983).  Furthermore, the only state apparently to have directly addressed the issue, Missouri, holds a foreclosure void when a party attempts to foreclose without holding title to the underlying promissory note. *Graham v. Oliver*, 659 S.W.2d 601, 603 (Mo. App. 1983) (citing *Cobe v. Lovan*, 92 S.W. 93 (Mo. 1906) (holding that such a foreclosure sale is void)).  There is no Nevada case law on point, but this is a common sense rule.  A person without the right to enforce an obligation cannot have recourse to repossess collateral even if he possesses a security instrument, because he has not suffered a default.  Moreover, with mortgages, a contrary rule could result in the odd situation that the holder of a promissory note and the respective holder of a deed of trust, when not the same person, or when the latter was not the agent or "nominee" of the former, would potentially be competing creditors as to the underlying property when the former had not given its right to elect foreclosure to the latter.  The

law avoids this situation by holding that, "the mortgage goes with the note." *Rodney*, 836 P.2d at 436 (quoting *Hill*, 52 Ariz. at 568).

In the present case, Plaintiff's claim is ripe because foreclosure has taken place. (Notice of Trustee's Sale, #28 Ex. C; Assignment of Deed of Trust, #28 Ex. E). However, Plaintiff's complaint fails to state a claim for relief. As noted by the Nevada Supreme Court, "the material issue in a wrongful foreclosure claim is whether the trustor was in default when the power of sale was exercised." *Collins*, 99 Nev. at 304. Plaintiff does not dispute that he is not in default. Further, Defendants filed the Notice of Default and Election to Sell on March 30, 2009, therefore Plaintiff does not qualify for the Nevada Supreme Court's Mandatory Foreclosure Mediation Program. The Program only applies to foreclosures where the Notice of Default was filed after July 1, 2009. In sum, Plaintiff has failed adequately allege a wrongful foreclosure claim.

Insofar as Plaintiff alleges that he has an actionable claim based on applying for a Home Affordable Modification Program, Plaintiff's claim is to no avail. Plaintiff alleges that Defendants "willfully failed to properly review or consider Plaintiff's [Home Affordable Modification Program] applications and/or further failed to suspend the foreclosure action and/or failed to provide Plaintiff any alternative foreclosure prevention options as required by [Home Affordable Modification Program] guidelines and/or any other federal applicable guidelines." (Complaint ¶ 45; #1). These claims fail to set out a claim for wrongful foreclosure. Wrongful foreclosure is appropriate for an actual defect in foreclosure. Perhaps such allegations are sufficient to support a breach of the implied covenant of good faith and fair dealing, but they are not legally sufficient to make out a claim for wrongful foreclosure. Other district courts have consistently held that the Home Affordable Modification Program does not provide borrowers with a private cause of action against lenders for failing to consider their application for loan modification, or even to modify an eligible loan. *See, e.g.*, *Lucero v. Countrywide Bank N.A.*, NO. 09-CV-1742 , 2010 WL 1880649, at *3–4 (S.D. Cal. May 10, 2010); *Villa v. Wells Fargo*

*Bank, N.A.*, NO. 10-CV-0081, 2010 WL 935680, at \*3 (S.D. Cal., March 15, 2010); *Aleem v. Bank Of America*, 09-CV-01812, 2010 WL 532330, at \*4 (C.D. Cal. Feb. 09, 2010); *Escobedo v. Countrywide Home Loans, Inc.*, 09-CV-1557, 2009 WL 4981618, at \*2–3 (S.D. Cal. Dec. 15, 2009).  Accordingly, Plaintiff's claim must be dismissed.

### b)   Conspiracy Claims

Plaintiff's conspiracy claims appear to allege that all of the Defendants conspired to create the MERS system to Plaintiff's detriment.  In Nevada, "[a]n actionable conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." *Collins*, 99 Nev. at 303.  Plaintiff provides no factual allegations relating to the conspiracy.

Plaintiff's fourth cause of action is labeled "conspiracy to commit fraud and conversion." As a preliminary matter, Plaintiff's allegation relating to conversion must fail, as conversion does not apply to real property.[2]  Furthermore, Plaintiff's other claims relating to fraud fail to meet the specificity requirements of Federal Rule of Civil Procedure 9.  As was noted above, Rule 9 requires particularity sufficient to allege the time, place and manner of the alleged fraudulent activities.  *See Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (fraud allegations should include the "who, what, where, when and how").  This includes a requirement that the plaintiff "set forth an explanation as to why the statement or omission complained of was false and misleading." *In re GlenFed Sec. Litig.*, 42 F.3d at 1548.  Plaintiff's allegations fail in this regard.  While Plaintiff's Complaint contains generalized allegations that Defendants made misrepresentations regarding the interest rate and his ability to make payments on the loan, they are merely generalized allegations without any substantial content or particularity as required by Rule 9.

---

[2]  While this does not appear to have been addressed specifically by the Nevada Supreme Court, it is well established that "an action for conversion will not lie for the taking of real property."  90 C.J.S. *Trover and Conversion* § 17 (2009).

Plaintiff's fifth cause of action is labeled "conspiracy to commit fraud related to MERS system."  By all appearances, this claim consists of stock allegations that the entirety of the MERS system is illegal.  This has been repeatedly addressed by this Court and others, and many other challenges to the MERS system have been consolidated before Judge Teilberg, District of Arizona, for pretrial issues.  Similar to many of the form complaints this Court has previously observed, Plaintiff claims that MERS is a "sham beneficiary" and improperly named as a nominee.  While MERS has brought much of the current glut of litigation upon itself as a result of using terminology such as beneficiary, Plaintiff's claims are simply insufficient to establish a claim for conspiracy.  *See generally Gomez v. Countrywide Banks, FSB*, No. 2:09-cv-01489, 2009 WL 3617650, at *1—2 (D. Nev. Oct. 26, 2009) (discussing the use of the terms nominee, beneficiary, and their application under N.R.S. § 107.080).  MERS is identified as the nominee under the Deed of Trust signed by Plaintiff.  (Deed of Trust, #26 Ex. A).  In Nevada, N.R.S. § 107.080(4) governs who may foreclose in a nonjudicial foreclosure.  This definition includes anyone "authorized under the terms of the trust deed." N.R.S. § 107.080(4).  Plaintiff does not allege that MERS was unauthorized to initiate foreclosure under the deed of trust, and in fact, MERS is designated as the nominee of the lender and therefore has the right to foreclose under the statute.  Plaintiff's claims simply fail to establish any basis for fraud or conspiracy.

### c)   Inspection and Accounting

Plaintiff also makes a claim for an inspection and accounting, but he fails to establish any legal basis for such a claim.  As one court has noted, a claim for accounting must be "tethered to relevant actionable claims."  *Hafiz v. GreenPoint Mortgage Funding, Inc.*, 652 F. Supp. 2d 1039, 1043–44 (N.D. Cal. 2009).  In the present case, Plaintiff does not present any actionable claims.  Additionally, it appears that a claim for an accounting may only be brought where there is a fiduciary or a trust relationship between the parties.  1 Am. Jur. 2d *Accounts and Accounting* § 55 (2010).  As discussed below, no such relationship exists between a lender and a borrower.  It

1   is possible that Plaintiff does have a claim under RESPA or one of the other laws governing

2   Defendant banks, but Plaintiff has not alleged such and his claim for inspection and accounting

3   must fail as pled.

4               **d)       Negligent Infliction of Emotional Distress**

5           In order to establish a claim for negligent infliction of emotional distress ("NIED"), just

6   as with IIED, "the plaintiff needs to show 'extreme and outrageous conduct with either the

7   intention of, or reckless disregard for, causing emotional distress.'" *Nevada v. Eighth Judicial*

8   *Dist. Court ex rel. County of Clark*, 42 P.3d 233 at 241 (quoting *Shoen v. Amerco, Inc.*, 111 Nev.

9   735, 746–747, 896 P.2d 469 (1995)).  The Nevada Supreme Court last laid out the elements of a

10  separate bystander NIED claim in 1999:  "the witness-plaintiff must prove that he or she (1) was

11  located near the scene; (2) was emotionally injured by the contemporaneous sensory observance

12  of the accident; and (3) was closely related to the victim." *Grotts v. Zahner*, 989 P.2d 415, 416

13  (1999).  This is a version of the "*Dillon* rule." Dobbs, *supra*, § 309; *see Dillon v. Legg*, 441 P.2d

14  912, 920 (Cal. 1968).  Nevada expressly adopted the *Dillon* rule in *State v. Eaton*, 710 P.2d

15  1370, 1377–78 & n.11 (Nev. 1985).

16          In addition to this cause of action, Nevada has permitted damages from extreme and

17  outrageous conduct in conjunction with claims based on negligence where there is a physical

18  harm.  The Nevada Supreme Court held "that the negligent infliction of emotional distress can be

19  an element of damage sustained by the negligent acts committed directly against the victim-

20  plaintiff." *Shoen*, 111 Nev. at 748.  The elements of such a cause of action are not elucidated by

21  the Nevada Supreme Court and it is unclear whether this even properly considered a NIED

22  claim, but it appears that negligence is an element of such a claim. *See Turner v. Mandalay*

23  *Sports Entertainment, LLC*, 180 P.3d 1172, 1178 n.32 (Nev. 2008) ("NIED is a tort in

24  negligence, and the plaintiff must establish the elements of duty, breach of duty, causation, and

25  damages.") (citing *Moon v. Guardian Postacute Services, Inc.*, 95 Cal.App.4th 1005, 116

Cal.Rptr.2d 218, 220-21 (2002)).  Recently, however, the court clarified that "[w]hile we have relaxed the physical manifestation requirement in a few limited instances, we cannot conclude that a claim for emotional distress damages resulting from deceptive trade practices in connection with a failed real estate and lending transaction should be exempted from the physical manifestation requirement."  *Betsinger v. D.R. Horton, Inc.*, 126 Nev. 17, at *3–4 (2010).  Accordingly, in order to state a claim for NIED under this theory plaintiff must establish, at the very least, the traditional elements of negligence and allege verifiable physical manifestations of emotional distress.

In the instant action, it is clear that Plaintiff is not entitled to a bystander NIED claim.  Further, Plaintiff has failed to adequately allege the necessary claims to an NIED claim based on negligence and physical harm.  This Court and others have concluded that a financial institution owes no duty to borrowers when its role does not exceed that of a mere lender of money.  *Velasquez v. HSBC Mortg. Services*, No. 2:09-cv-00784, 2009 WL 2338852, at *5 (D. Nev. July 24, 2009) (citing *Nymark v. Heart Federal Savings and Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (Cal. Ct. App. 1991)).  Plaintiff does not purport to establish any of the elements of negligence, but rather claims that he has suffered mental anguish from the Defendants "unlawful foreclosure process." (Complaint ¶ 90, #1).  Besides the failure to establish a plausible case for negligent actions on the part of any of Defendants or physical harm, Plaintiff also fails to allege any conduct that would amount to extreme and outrageous conduct, the fundamental element to any claim involving emotional distress, whether intentional or negligent.  Foreclosure, particularly where there is no legally sufficient claim that it was wrongful, is insufficient to amount to an actionable claim for NIED.

        e)      **Quiet Title**

Quiet title action is the proper method by which to adjudicate disputed ownership of real property rights.  *See Howell v. Ricci*, 197 P.3d 1044, 1046 n.1 (Nev. 2008). Though not properly

a cause of action, an action to quiet title is an equitable proceeding in which a party seeks to settle a dispute over ownership of property or to remove a cloud upon his title to the property. *MacDonald v. Krause*, 77 Nev. 312, 317–18, 362 P.2d 724 (Nev. 1961).  A widely accepted rule in such actions is that the party must tender the undisputed amount due and owing to challenge the validity of a sale or title to the property, though this has not been explicitly addressed by the Nevada Supreme Court. *See, e.g.*, *Abdallah v. United Savings Bank*, 43 Cal. App. 4th 1101, 1109 (1996). In essence, under the Tender Rule, he who seeks equity must do equity. *See McQuiddy v. Ware*, 87 U.S. 14, 19 (1873). This was clearly a factor to the Nevada Supreme Court when it ruled  in a favor of a party challenging a sale  on their property due to past due taxes. *Provenzano v. Clark County*, 73 Nev. 348, 353 (1957) ("Plaintiff's action was to quiet title to the property involved, accompanied by a tender to pay all taxes.").

Defendants contend that Plaintiffs' complaint is deficient in its failure to refute the basic premise on which the foreclosure proceedings were commenced: default on the loan.  As with the other causes of action, Plaintiff includes very little specificity beyond the general allegation of wrongdoing.  Plaintiff does allege that Plaintiff's are without "power, authority, or right to foreclose or to sell the subject property."  (Complaint ¶ 95, #1).  Besides the fact that this allegation alone is insufficient to state a claim for relief, the public records demonstrate that Defendants did have the right to foreclose under N.R.S. § 104.080.  (*See* Notice of Default and Election to Sell, #28 Ex. B; Notice of Trustee's Sale, #38 Ex. C).  Accordingly, Plaintiff's claim must be dismissed.

### f)       Breach of Good Faith and Fair Dealing

A cause of action for breach of the covenant of good faith and fair dealing can lie in contract or tort. "It is well established that all contracts impose upon the parties an implied covenant of good faith and fair dealing, which prohibits arbitrary or unfair acts by one party that work to the disadvantage of the other." *Nelson v. Heer*, 123 Nev. 26, 163 P.3d 420, 426–27

(2007). Where one party to a contract "deliberately countervenes the intention and spirit of the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing." *Hilton Hotels v. Butch Lewis Productions*, 107 Nev. 226, 808 P.2d 919, 922–23 (1991).

    In the present case, Plaintiff alleges that Defendants have a contract with Plaintiff and a duty to "pay at least as much consideration to Plaintiff['] s financial interests as to their own financial interests; and . . . to comply with all applicable laws of the State of Nevada and published [Home Affordable Modification Program] guidelines and requirements under the [Home Affordable Modification Program] contracts." (Complaint ¶ 99, #1). As to the first duty, it is simply not required by law. Plaintiff is confusing this cause of action with a claim for bad faith against an insurance company, where the law does impose a duty to consider the interests of their client or customer to the same level that they consider their own interests. *See Allstate Insurance Co. v. Miller*, 212 P.3d 318, 325 (Nev. 2009). But this duty does not extend to lenders. In fact, on a related matter the Ninth Circuit has found that lenders and debtors are adversaries, not fiduciaries. *See Giles v. Gen. Motors Acceptance Corp.,* 494 F.3d 865, 882 (9th Cir.2007) (noting that the district court in that case had held that the Nevada Supreme Court would not recognize a fiduciary relationship as a matter of law between a lender and borrower).

    As to the second alleged duty, it is undisputed that Defendants have an obligation to follow Nevada laws and the Home Affordable Modification Program guidelines, but as discussed above, borrowers do not have standing to challenge Defendants compliance. Borrowers have been found to be incidental beneficiaries, to the Home Affordable Modification Program agreement between Fannie Mae and individual lenders. *See Villa v. Wells Fargo Bank, N.A.*, NO. 10-CV-0081, 2010 WL 935680, at *3 (S.D. Cal., March 15, 2010). Nor does Plaintiff sufficiently allege actions that were deliberate taken to countervene the original loan transaction. Accordingly, the Court must dismiss Plaintiff's claim.

### g)   Injunctive Relief, Declaratory Relief, and Rescission

Plaintiff alleges injunctive relief, declaratory relief, and rescission as causes of action, which they are not.  These are forms of relief that are potentially available given success or a likelihood of success on the merits.  As the Court is dismissing each of Plaintiff's causes of action, any form of relief is inappropriate.  Additionally, even though Plaintiff filed a motion for injunctive relief, he does state injunctive relief as a cause of action in his complaint.

Plaintiff seeks injunctive relief that would "1) Prevent the Defendant parties from foreclosing on the subject property; [] 2) to stay eviction proceedings; [and] 3) compel the Defendant parties to functionally modify the terms of the loan on the subject property." (Complaint ¶ 112, #1).  Federal Rule of Civil Procedure 65(a) allows a court to issue a preliminary injunction on notice to an adverse party.  The Ninth Circuit employs two sets of criteria for evaluating a request for preliminary injunctive relief.  Under the "traditional test," the movant must establish: "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to the plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *Beardslee v. Woodford*, 395 F.3d 1064, 1067 (9th Cir. 2005) (citation omitted).  As to the second element, the Supreme Court recently clarified that a plaintiff seeking an injunction must demonstrate that irreparable harm is likely, not just possible. *Winter v. NRDC, Inc*., 129 S. Ct. 365, 375–76 (2008).  Under the "alternative test," the plaintiff can meet its burden by showing "either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." *Beardslee*, 395 F.3d at 1067 (citation and internal quotation marks omitted).  "These two alternatives represent 'extremes of a single continuum,' rather than two separate tests." *Id.* (citations omitted).

Plaintiff's request for injunctive relief should be denied under the above analysis.  Most

significantly, Plaintiff has not established a likelihood of success on any of the claims that he has pled.  On the contrary, the Court is dismissing all of Plaintiff's claims.  Further, the foreclosure has already taken place, so there is no longer any risk of irreparable harm.

Regarding Plaintiff's request for declaratory relief and rescission, Plaintiff has failed to establish any basis for either.  As Plaintiff has failed to make out any actionable substantive claims, his requests for relief must be dismissed as well.

## CONCLUSION

The Court has considered the pleadings and arguments of all parties.

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (#10) is GRANTED.  Plaintiff's complaint is hereby dismissed without prejudice.

IT IS FURTHER ORDERED that Plaintiff's Motion for Remand (#16) is DENIED.

DATED this 23rd day of June, 2010.

_____
GLORIA M. NAVARRO
UNITED STATES DISTRICT JUDGE